Inga Britt LILLBASK as legal
guardian on behalf of Lindsey
MAUCLAIRE, Plaintiff,

v.

Theodore S. SERGI, et al., Defendants.

No. 3:97CV1202 (PCD).

United States District Court,
D. Connecticut.

March 30, 2002.

Winona Wellman Zimberlin, Hartford, Arthur Allan Smith, Education Law Project, Inc, Mansfield Center, for Ingabritt Lillbask, Legal Guardian O/B/O Lindsey Mauclaire, plaintiffs.

Richard J. Buturla, Marsha Belman Moses, Berchem, Moses & Devlin, P.C., Milford, Nyle Kimrick Davey, Attorney General's Office, Health & Human Services, Hartford, Brian A. Lema, Michelle Claire Laubin, Berchem, Moses & Devlin, P.C., Milford, for Dept of Education, Theodore S. Sergi, Comm, Board of Education, Kenneth Freeston, Supt, Redding Schools, Redding Bd of Ed, defendants.

### RULING ON SECOND MOTIONS FOR SUMMARY JUDGMENT

DORSEY, Senior District Judge.

Plaintiff moves to submit additional evidence. State Defendants and Redding Defendants each separately move for summary judgment against Plaintiff. Plaintiff separately cross-moves for summary judgment against State Defendants and Redding Defendants. Plaintiff moves to compel discovery. Plaintiff moves for relief from the previous summary judgment ruling.

## I. JURISDICTION

Subject matter jurisdiction is pursuant to 20 U.S.C. § 1415(i)(3)(A) and 28 U.S.C. § 1331.

## II. BACKGROUND

### A. Factual Background

Lindsey Mauclaire, a handicapped child, receives special education under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* He is cared for by Plaintiff, his guardian, who has made many sacrifices to care for him. In 1996–97, he attended a pre-kindergarten program at Redding Elementary School ("RES"). On August 5, 1997, a Planning and Placement Team ("PPT") met to develop his Individualized Education Plan ("IEP") for the 1997–98 school year. The Redding Board of Education ("Board") decided to place Lindsey at St. Vincent's Special Needs Center ("St.Vincent's") in Trumbull, Connecticut. Pursuant to the IDEA, Plaintiff appealed this placement and other aspects of his IEP to the Connecticut Department of Education for a due process hearing. This case concerns four hearing decisions, dated May 5,

1997 (Second Hearing, Case 97–046), August 5, 1997 (First Hearing, Case 97–028), September 5, 1997 (Third Hearing, Case 97–131), and August 7, 1998 (Fourth Hearing, Case 97–231). The Fourth Hearing Officer upheld the Board's decision to place Lindsey at St. Vincent's. Under the stay-put rule, Lindsey remains at RES under his original IEP.

**B. Procedural History**

Pursuant to the IDEA, Plaintiff sued the Board and Kenneth Freeston as Superintendent of Schools (collectively, "Redding Defendants") and the CDE and Theodore S. Sergi as Connecticut Department of Education Commissioner (collectively, "State Defendants") to challenge these four hearing decisions. Plaintiff claims injunctive relief and damages under § 504 of the Rehabilitation Act (29 U.S.C. § 794), related state statutes (CONN. GEN. STAT. § 10–76a *et seq.*), and the due process and equal protection clauses of the federal and Connecticut constitutions. Essentially, Plaintiff contends that Redding Defendants placed Lindsey at St. Vincent's in retaliation for exercising her statutory hearing rights.

On December 30, 1999, this court directed the parties to "file cross motions for partial summary judgment on the issue of the hearing appeals under the IDEA .... Until the hearing appeals are resolved, there will be no consideration of [P]laintiff's retaliation claims." On September 29, 2000, summary judgment was granted for and against some of Plaintiff's claims. *See Lillbask ex rel. Mauclaire v. Sergi,* 117 F.Supp.2d 182 (D.Conn.2000). On May 1, 2001, Plaintiff's first motion to compel discovery was denied. The parties now cross-move for summary judgment on the remaining claims.

**III. PLAINTIFF'S MOTION TO SUBMIT ADDITIONAL EVIDENCE**

Plaintiff moves to submit additional evidence to supplement the administrative record. The evidence relates to Lindsey's progress at RES subsequent to the decision to place him at St. Vincent's. The taking of additional evidence is a matter of left to the discretion of the trial court. *See Town of Burlington v. Dep't of Educ.,* 736 F.2d 773, 791 (1st Cir.1984), *aff'd on other grounds sub nom. Sch. Comm. v. Dep't of Educ.,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). The issue is whether the administrative record is sufficient evidence to evaluate the hearing officer's decision. *See Gill v. Columbia 93 Sch. Dist.,* 217 F.3d 1027, 1037–38 (8th Cir.2000).

Plaintiff had earlier sought to compel discovery as to Lindsey's current progress at RES. In ruling on that motion, this court held,

Whether Lindsey would, today, be better served at RES rather than at St. Vincent's is not an issue before this court .... The claim here is not whether Lindsey is currently progressing appropriately at RES, but, in part, whether he was accorded the procedural protections required by federal and state law either in the administrative hearings or by the time Plaintiff filed her complaint herein. To hold otherwise would transform this case into an ongoing review of Lindsey's educational status until he is twenty-one.[1]

---

1. These same reasoning was applied in deciding the motions for summary judgment. Plaintiff sought to submit additional evidence regarding Lindsey's then present development, including his August 29, 2000 report card and an August 1, 2000 letter from Willows Pediatric Group. Neither submission was considered in deciding the motions on the ground that neither dealt with matters relevant either to the administrative hearings or at the time Plaintiff's action was filed in this court. *See Lillbask,* 117 F.Supp.2d at 188.

In recognition of this earlier ruling, Plaintiff now argues that evidence of Lindsey's current progress at RES is relevant to the appropriateness of the 1997 decision to place him at St. Vincent's. Her argument is contrary to the intent of the IDEA. The IDEA provides that "the court (i) shall receive the records of the administrative proceedings[, and] (ii) shall hear evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(B). The statute seeks to avoid a trial *de novo* by prohibiting witnesses from repeating or embellishing previously rendered testimony. *See Town of Burlington,* 736 F.2d at 790; *see also Wills v. Ferrandino,* 830 F.Supp. 116, 120 (D.Conn. 1993) (following *Town of Burlington* ). The record now includes about 47 days of hearings and about 8000 pages of testimony exclusive of exhibits. In avoiding a trial *de novo, see Walker County Sch. Dist. v. Bennett,* 203 F.3d 1293, 1298–99 (11th Cir.), *cert. denied,* 531 U.S. 1059, 121 S.Ct. 670, 148 L.Ed.2d 572 (2000), the IDEA seeks to promote speedy resolution of the litigation.

■ Evidence as to Lindsey's' progress several years after an administrative decision does not necessarily show that the same placement would have been appropriate several years earlier. Moreover, to make such evidence admissible would suggest it is discoverable. "A lenient standard for additional evidence would have the consequence of making the whole IDEA process more time consuming, as parties scrambled to use the federal court proceeding to patch up holes in their administrative case. Whether this lengthy process would serve students is doubtful at best." *Springer v. Fairfax County Sch. Bd.,* 134 F.3d 659, 667 (4th Cir.1998). To permit ongoing and lengthy discovery of a student's current progress through his or her school records, teachers, administrators, paraprofessionals, and doctors, pending an administrative appeal, would increase the litigious nature of proceedings and undermine expediency, contrary to the command to give "due weight" to the findings of the hearing officer, *see Bd. of Educ. v. Rowley,* 458 U.S. 176, 206, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), by diluting the evidence before the hearing officer, *O'Toole ex rel. O'Toole v. Olathe Dist. Sch. Unified Sch. Dist. No. 233,* 963 F.Supp. 1000, 1015 (D.Kan.1997) (court should not allow a party to undercut the statutory role of administrative expertise), *aff'd,* 144 F.3d 692 (1998). Evidence beyond the administrative record, if considered to be "supplemental," requires care "not to allow such evidence to change the character of the hearing from one of review to a trial *de novo,*" *Town of Burlington,* 736 F.2d at 790, lest in doing so the PPT and the hearing officer lose their intended first consideration of the child's educational needs.

## IV. MOTIONS FOR SUMMARY JUDG-MEN

### A. Standard of Review

#### 1. *Legal standard for summary judgment*

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The mere existence of an alleged factual dispute is not, by itself, sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The adverse party must provide sufficient evidence to demonstrate that there is a genuine issue of material fact. *See id.* at 248–49, 106 S.Ct. 2505. "Only disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. 2505. The court must view the facts in the light most favorable to the adverse party and draw all inferences in its favor. *See Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.1992). However, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). A party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986).

### 2. Standard of review of prior administrative hearings under the IDEA

The IDEA provides that "[a]ny party aggrieved by the findings and decision" made by a hearing officer "shall have the right to bring a civil action with respect to the complaint presented ... in a district court of the United States." 20 U.S.C. § 1415(i)(2)(A). The district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) bas[e] its decision on the preponderance of the evidence." 20 U.S.C. § 1415(i)(2)(B); *see* 34 C.F.R. § 300.512. The district court must give "due weight" to the findings and decision of the hearing officer. *See Rowley,* 458 U.S. at 206, 102 S.Ct. 3034. This deference seeks to ensure that district courts do not "substitute their own notions of sound educational policy for those of the school authorities which they review." *Id.; see also Mrs. B. ex rel. M.M. v. Milford Bd. of Educ.,* 103 F.3d 1114, 1120 (2d Cir.1997). Federal courts "are expected to give due weight to [administrative decisions], mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and

difficult questions of educational policy." *Walczak v. Fla. Union Free Sch. Dist.,* 142 F.3d 119, 129 (2d Cir.1998) (quotation marks and original alteration omitted); *see also Naugatuck Bd. of Educ. v. Mrs. D.,* 10 F.Supp.2d 170, 177 (D.Conn.1998); *Wall ex rel. Wall v. Mattituck–Cutchogue Sch. Dist.,* 945 F.Supp.2d 501, 507 (E.D.N.Y.1996); *Wills,* 830 F.Supp. at 121 n. 1.

█ In reviewing the findings and decisions of the hearing officers, questions of fact dealing with how and to what extent the IDEA has been applied to particular factual circumstances are accorded deference and due weight. Procedural issues regarding the IDEA, other federal and state statutes, and due process issues under the U.S. or Connecticut constitutions are reviewed *de novo. See Mrs. B.,* 103 F.3d at 1122 (they "concern[ ] an issue of law; namely, the proper interpretation of the federal statute and its requirements"). Deference is not warranted as hearing officers do not have greater experience or expertise than courts in such matters.

### B. Timeliness of Hearing 97–231 (as against State Defendants)

█ The IDEA requires a hearing officer to reach a decision within 45 days of receipt of a hearing request. The decision in Hearing 97–231, marked by dozens of extensions and continuances, took almost a year to be released. Against this, State Defendants argue that Plaintiff's timeliness claim is moot, asserting that new regulations approved on March 23, 2000 address the timeliness issue. Plaintiff does not dispute the applicability or effectiveness or sufficiency of the new regulations. Instead, she argues that her situation is an exception to the mootness doctrine.

█ Mootness deprives a court of subject matter jurisdiction. *Bd. of Trs. of the*

*State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir.1994). "It is a firmly entrenched and fundamental principle of law that a cause is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, could not have any practical effect upon the then existing controversy" *Flight Eng'rs Int'l Ass'n v. TWA, Inc.*, 305 F.2d 675, 680 (8th Cir.1962) (citation omitted). Mootness can be demonstrated by showing "no practical relief can follow a judicial determination of the controversy." *Id.* (citation omitted).

If in the future State Defendants were to violate the new regulations as to a future plaintiff and that plaintiff would be without a remedy, then State Defendants' conduct would be "capable of repetition, yet evading review" and hence an exception to the mootness doctrine. *See Honig v. Doe*, 484 U.S. 305, 318, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) (quoting *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982)). While Plaintiff recites this doctrine and argues State Defendants have repeatedly violated similar protections in the IDEA and in the consent decree in *Barbara R. v. Tirozzi*, No. H–83–991 (D. Conn. entered Sept. 11, 1985), she fails to assert a necessary element of the doctrine, namely that a future plaintiff would also be without a remedy, given the new regulations.

■ In an effort to escape the mootness doctrine, Plaintiff next points to the monetary damages she seeks for violation of the IDEA.[2] The availability of monetary dam-

ages prevents dismissal for mootness. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 608–09, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). However, monetary damages are generally not available under the IDEA directly.[3] *Neil F. ex rel. Charlie F. v. Bd. of Educ.*, 98 F.3d 989, 991 (7th Cir.1996). While there are exceptional circumstances permitting monetary damages, *Stellato v. Bd. of Educ.*, 842 F.Supp. 1512, 1516 (N.D.N.Y.1994), Plaintiff fails to assert the necessary facts to support these exceptional circumstances.

In an effort to escape the mootness doctrine, Plaintiff next points to the monetary damages she seeks for violation of CONN. GEN. STAT. § 10–76h(b). State Defendants respond that there is no evidence that Plaintiff has suffered any financial damage.[4] Plaintiff asserts damages because she was never heard by a hearing officer regarding some issues in her 1996–97 IEP. As resolved in the previous summary judgment, a hearing officer's alleged refusal to hear issues not previously raised at a PPT meeting would fault Redding Defendants for failing to fulfill their state law obligations to allow the issue to be heard at a PPT meeting, not State Defendants. *Lillbask*, 117 F.Supp.2d at 190. Moreover, Plaintiff's failure to be get resolution of these issues before the First Hearing Officer flowed from her voluntary withdrawal of her dispute. Plaintiff also asserts damages as Lindsey has been under an outdated IEP for several years. This is a conclusory argument to the effect that the

---

2. Plaintiff does not bring separate claims for violation of the *Barbara R.* consent decree, violation of 34 C.F.R. § 300.511(a), or violation of CONN. GEN. STAT. § 10–76h(b), all of which require hearing officers to reach a decision within 45 days of receipt of a hearing request.

3. Not reached is whether monetary damages are available under 42 U.S.C. § 1983 for vio-

lations of the IDEA. *See, e.g., R.B. ex rel. L.B. v. Bd. of Educ.*, 99 F.Supp.2d 411, 418 (S.D.N.Y.2000). Although in previous briefs Plaintiff has referred to § 1983, she does not actually plead this claim and so it was not recognized.

4. State Defendants do not argue that monetary damages are unavailable under CONN. GEN. STAT. § 10–76h(b).

IEP is old. Plaintiff does not assert any actual harm flowing from an older IEP. Indeed, here she is the one enforcing the stay-put order to keep Lindsey at RES, which is where the earlier IEP placed him.

Plaintiff lastly argues that Lindsey is eligible for compensatory education, a remedy which would defeat mootness. *See Pihl v. Mass. Dep't of Educ.*, 9 F.3d 184, 189–90 (1st Cir.1993). The doctrine of compensatory education is not applicable here. The doctrine permits a court to grant a parent compensation for educational services, required but not rendered. Plaintiff seeks the *status quo*. Plaintiff seeks to preclude Lindsey from being sent to St. Vincent's. The remedy for this is to challenge the hearing officer's determination to place him at St. Vincent's, not compensatory education. Validity of the hearing officer's determination has been resolved in the previous summary judgment. *Lillbask*, 117 F.Supp.2d at 199–202.

In light of the new regulations, Plaintiff is unable to assert some form of practical relief as to Hearing 97–231. Plaintiff ultimately secured a hearing officer determination and during this time Lindsey remained at RES, the result Plaintiff wanted. The timeliness claim as to Hearing 97–231 is moot. A finding of mootness is not meant to condone State Defendants' provision of a hearing which took almost a year, not 45 days, to complete.

### C. Timeliness of Hearings 97–028, 97–046, and 97–131 (as against State Defendants)

In the previous ruling, Plaintiff was granted summary judgment that State Defendants violated the IDEA and CONN. GEN. STAT. § 10–76h(b) as to the timeliness of Hearings 97–028, 97–046, and 97–131. State Defendants move for reconsideration of this conclusion, arguing that since they complied with the *Barbara R.* consent decree, they did not violate federal or state law. As a motion for reconsideration would be untimely, *see* D. CONN. L. CIV. R. 9(e) ("[m]otions for [r]econsideration shall be filed within ten (10) days of the filing of the decision or order from which relief is sought"), they submit a motion for extension of time *nunc pro tunc*. In support, State Defendants assert that they recently changed internal counsel, that they did not act in bad faith, malice, or disregard of this court or of the applicable rules of civil procedure, and that because of the present motion for summary judgment Plaintiff would not be prejudiced. They also argue this court contributed to their error, asserting that summary judgment was granted against them as to these three hearings only because they failed to submit a Local Rule 9(c) statement and asserting that such statements were not submitted because of this court's instruction "that the parties shall rely primarily on the administrative record." *See Lillbask*, 117 F.Supp.2d at 186.

■ The motion for extension of time *nunc pro tunc* comes over ten months after the first summary judgment was entered. Change of internal counsel is irrelevant. Lack of bad faith and of prejudice, while relevant, is not sufficient to justify the unreasonably long delay.

State Defendants' attribution of their error to this court is unfounded. This court called for the parties to file motions for summary judgment. D. CONN. L. CIV. R. 9(c) clearly requires Local Rule 9(c) statements when filing motions for summary judgment. Nothing in this court's order was to the contrary. Indeed, all the other parties submitted Local Rule 9(c) statements.

State Defendants assert that they followed this court's directive "that the parties shall rely primarily on the administra-

tive record," to the exclusion of filing a Local Rule 9(c) statement. There was nothing wrong with this court's directive. The *parties* were directed to rely on the administrative record as their primary source of evidence in making their arguments. This is not a foundation for an expectation that this court would marshal facts on behalf of a party. State Defendants' argument, if accepted, was that they were not obliged to file a Local Rule 9(c) statement, to assert any contrary facts in their memorandum of law, or to argue against Plaintiff's conclusions. Rather, their implicit assertion is that they expected this court to hunt through the entire administrative record in an effort to find any facts that might contradict Plaintiff's assertions. This is not reasonable. *See Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir.1995) ("[J]ust as a district court is not required to 'scour the record looking for factual disputes,' it is not required to scour the party's various submissions to piece together appropriate arguments. A court need not make the lawyer's case.") (internal citation omitted). Even assuming *arguendo* that State Defendants' expectation was reasonable, it leaves wholly unexplained their failure to move for reconsideration within ten days of reading the summary judgment ruling and realizing their mistake.

State Defendants' argument is to the effect that this court exclusively focused on their failure to file a Local Rule 9(c) statement. The reason State Defendants did not prevail in the previous motion for summary judgment is not limited to the procedural failure to file a Local Rule 9(c) statement. Apart from not submitting a Local 9(c) statement, State Defendants failed to oppose or contradict any of Plaintiff's assertions in their memorandum of law. This is not to say that State Defendants were silent or had no knowledge of Plaintiff's arguments. Indeed, they argued vigorously on other grounds against granting

Plaintiff summary judgment as to these three hearings. Their arguments were fully heard and found to be without merit. While they point to their lack of a Local Rule 9(c) statement, the present motion for an extension of time *nunc pro tunc* is instead a vehicle to raise new arguments that their previous counsel declined to raise ten months earlier.

"The purpose of [the law of the case] doctrine is to promote the judicial system's interest in finality and in efficient administration." *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 165 (3d Cir.1982) (internal quotation marks omitted). The same purpose drives the requirement to file motions for reconsideration in a timely fashion. Good cause not having been shown for the ten-month delay, the motion for extension of time *nunc pro tunc* is denied and so the motion for reconsideration is denied as untimely.

### D. Connecticut Due Process and Plaintiff's Request for a PPT (as against Redding Defendants)

█ Public education in Connecticut is guaranteed by Article 8 § 1 of the Connecticut constitution. It provides, "There shall always be a free public elementary and secondary schools in the state. The general assembly shall implement this principle by appropriate legislation." This imposes on the legislature an affirmative constitutional obligation to provide schoolchildren throughout the state with educational opportunities. *Sheff v. O'Neill*, 238 Conn. 1, 17, 678 A.2d 1267 (1996); *Horton v. Meskill*, 172 Conn. 615, 648–49, 376 A.2d 359 (1977) (educating children is the constitutional duty of the state).

Plaintiff's complaint does not directly claim a denial of Lindsey's right to a free public education. She instead claims State Defendants and Redding Defendants denied Lindsey's state due process rights.

Thus, the issue, more precisely framed, is not whether Lindsey was denied his right to a free public education but whether any denial was without due process of law. *See Mr. & Mrs. D. v. Southington Bd. of Educ.*, 119 F.Supp.2d 105, 116 (D.Conn. 2000) (when due process has been provided, not a constitutional deprivation to deny the service sought), *remanded sub nom. M.D. v. Southington Bd. of Educ.*, 16 Fed. Appx. 70 (2d Cir.2001) (unpublished) (remanded for supplementation of the record).

█ The due process clause of the state constitution, Article 1 § 10,[5] reads that "[a]ll courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." State and federal constitutional provisions need not be interpreted to have identical meanings. *See Horton*, 172 Conn. at 642, 376 A.2d 359. "[F]ederal decisional law is not a lid on the protections guaranteed under [the] state constitution." *Fair Cadillac–Oldsmobile Isuzu P'ship v. Bailey*, 229 Conn. 312, 316, 640 A.2d 101 (1994) (alternation in original) (quoting *Doe v. Maher*, 40 Conn.Supp. 394, 419, 515 A.2d 134 (Super.Ct.1986)). That being said, the Connecticut Supreme Court has held that the 14th Amendment due process clause has substantially the same meaning as the state civil due process clause, and therefore imposes no new limitation on the power of the people to determine their civil rights by their fundamental law. *See Proctor v. Sachner*, 143 Conn. 9, 17–18, 118 A.2d 621 (1955) (referring to Article 1 § 12, now Article 1 § 10); *see also Brunswick Corp. v. Liquor Control Comm'n*, 184 Conn. 75, 82 n. 4, 440 A.2d 792 (1979); *In re Alexander V.*, 25 Conn.

App. 741, 742 n. 1, 596 A.2d 934 (App.Ct. 1991), *aff'd*, 223 Conn. 557, 613 A.2d 780 (1992).

█ Plaintiff argues that Lindsey's right to public education should not be denied without a showing Lindsey was not making progress in RES in 1997 and that Lindsey's right to public education would be meaningless if Redding Defendants were allowed to exclude him from RES. For a disabled child, she argues, the state constitutional right of access to public education must mean, at the least, that the child may attend public school if the school is able to provide an appropriate program in which the child can make progress. Whether or not this argument is sound, it does not go to show that Lindsey has a right to attend the school of Plaintiff's choice. The Connecticut right to a public education does not establish a right for a particular student to a particular school. *See Savage v. Aronson*, 214 Conn. 256, 286–87, 571 A.2d 696 (1990). Neither State Defendants nor Redding Defendants have barred Lindsey from attending public school or receiving a free public education. If Lindsey were placed at St. Vincent's instead of RES, without cost to Plaintiff, he is merely being afforded his right to public education in a different location.

█ Plaintiff argues that, under the state constitution, it was error for the Second Hearing Officer to deny her request for a PPT. This is not quite correct. The single question presented to the Second Hearing Officer was "May the Board refuse to schedule a[PPT] meeting in response to a request for such a meeting from a Parent?" The Second Hearing Officer, in a thoughtful and reasoned opinion, held that Redding Defendants should

---

**5.** This is the civil due process clause. The criminal due process clause can be found at Article 1 § 8.

grant any reasonable request to hold a PPT meeting. This ruling of the hearing officer does not violate Connecticut due process and does not preclude Plaintiff from being heard. As was held in the previous summary judgement discussing violations of federal due process protections,

> Plaintiff's argument misstates the avenues open to her. She can still avail herself of the state hearing system for review as to whether a denial of a request for a PPT meeting was reasonable. Should the hearing officer decide that the request was reasonable, Redding Defendants would be obliged to provide one. Should the hearing officer decide that the request was not reasonable, Plaintiff can then still request this court to review that decision. The avenues of due process are still very much available to her.

*Lillbask*, 117 F.Supp.2d at 196.

■ The other inquiry is whether in this instance, Redding Defendants violated Plaintiff's state due process rights when they found that Plaintiff's request for a PPT meeting was unreasonable. The hearing officer found that there were a large number of PPT meetings held in the previous six months; that all of the issues raised by Plaintiff had previously been discussed and investigated; that many of the issues that were offered for discussion did not involve changes to Lindsey's IEP; and that the two issues that were germane to his IEP were not ripe for discussion at the time the PPT meeting was requested. Such is found not violative of Plaintiff's state due process rights. "The PPT meeting is not an insta-matic forum to allow parents to be heard whenever and about whatever they want; rather, it is a procedural step in the protection of a child's educational rights under the IDEA." *Id.*

### E. Connecticut Procedural Due Process and Conduct of the Hearings (as against State Defendants and Redding Defendants)

Plaintiff's complaint limits this claim to procedural due process, not substantive due process. As noted in the previous summary judgment ruling, *Lillbask,* 117 F.Supp.2d at 203, Plaintiff has previously limited this claim to the assertion that she was not afforded a hearing were when comments made in the determinations regarding the conduct of her attorney. Previously, this was found not to violate her federal due process rights. Where, as here, "a party does not provide an independent analysis asserting the existence of greater protection under the state constitutional provision than its federal counterpart, [a court] will not of [its] own initiative address that question." *See Barton v. Ducci Elec. Contractors, Inc.,* 248 Conn. 793, 812 n. 15, 730 A.2d 1149 (1999). Without any distinguishing between the contours of state procedural due process and federal due process, the same result is reached.

### F. Connecticut Due Process and CONN. GEN. STAT. § 10–76h(a)(1) (as against State Defendants and Redding Defendants)

■ Plaintiff argues that CONN. GEN. STAT. § 10–76h(a)(1) is unconstitutional under the state due process clause as applied to Lindsey. Due process requires notice and opportunity to be heard at a meaningful time and in a meaningful manner, but does not mandate any specific form of procedure; rather, it protects substantive rights. *See Fermont Div., Dynamics Corp. of Am., Inc. v. Smith,* 178 Conn. 393, 423 A.2d 80 (1979) (federal and state due process). Plaintiff has not been denied an opportunity to be heard. She was merely required by state law to raise the issue

first at a PPT meeting prior to raising it before a hearing officer.

Administrative processes which are not overly time-consuming or burdensome can further, not obstruct, due process by allowing parties access to a forum and determination in a timely fashion. Requiring that issues be first raised at a PPT may resolve issues, permitting prompt implementation and making review by a hearing officer unnecessary. *Cf. Hous. Auth. v. Papandrea*, 222 Conn. 414, 420–21, 610 A.2d 637 (1992).

▆▆▆ Plaintiff argues the requirement that issues first be aired at PPT meeting has in fact been used to deny Plaintiff the opportunity to be heard. Plaintiff argues that Redding Defendants refused to allow certain issues to be heard at PPT meetings; hearing officers then allegedly refused to hear Plaintiff's concerns at two subsequent due process hearings. Any claim of denial of due process would lie against Redding Defendants for failure to fulfill their state law obligations as the statute commands. It does not warrant finding the state statute unconstitutional. *See Barton*, 248 Conn. at 813, 730 A.2d 1149 ("We have consistently held that every statute is presumed to be constitutional and have required that invalidity be established beyond a reasonable doubt.") (citation omitted); *State v. Breton*, 212 Conn. 258, 269, 562 A.2d 1060 (1989) ("we indulge in every presumption in favor of the statute's constitutionality").

G. Connecticut Equal Protection and CONN. GEN. STAT. § 10–76h(a)(1)

Plaintiff argues that CONN. GEN. STAT. § 10–76h(a)(1) violates the equal protection clause of the state constitution. Her argument is not reached as this is not a count alleged in her complaint. She points

to paragraphs 48 and 50. While these counts do mention the "equal protection clause of the . . . Connecticut Constitution" and "state law," both counts refer to the actions of the hearing officers as violative of her rights, not that the statute itself is unconstitutional.

H. Connecticut Equal Protection and Plaintiff's Request for a PPT (as against Redding Defendants)

State equal protection appears in two clauses. Article 1 § 1 reads, "All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community." Article 1 § 20 (as amended) reads, "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his civil or political rights because of . . . physical or mental disability." State and federal constitutional provisions need not be read to have identical meanings. *Horton*, 172 Conn. at 642, 376 A.2d 359 "[F]ederal decisional law is not a lid on the protections guaranteed under [the] state constitution." *Fair Cadillac–Oldsmobile Isuzu P'ship*, 229 Conn. at 316, 640 A.2d 101. That being said, the state equal protection clause has substantially the same meaning as the 14th Amendment equal protection clause. *See Barnes v. City of New Haven*, 140 Conn. 8, 14, 98 A.2d 523 (1953) (Article 1 § 1); *accord Caldor's Inc. v. Bedding Barn, Inc.*, 177 Conn. 304, 314, 417 A.2d 343 (1979) (federal and state clauses have the same meanings and the same limits).[6] Where, as here, "a party does not provide an independent analysis asserting the existence of greater protection under the state constitutional provision than its federal

---

6. Plaintiff calls this case into doubt *See Ramos v. Town of Vernon*, 254 Conn. 799, 761 A.2d 705 (2000).

counterpart, [a court] will not of [its] own initiative address that question." *See Barton,* 248 Conn. at 813, 730 A.2d 1149.

Plaintiff argues that since Redding Defendants' actions are inconsistent with IDEA procedure, this a violation of her state equal protection rights. The IDEA ensures the protection of the rights of disabled children requiring special education. *See* 20 U.S.C. § 1400(d)(1)(B). If Redding Defendants' actions were consistent with IDEA procedure, there is no violation of federal equal protection. *See Scanlon v. San Francisco Unified Sch. Dist.,* No. C91–2559(FMS), 1994 WL 860768, at *11 (N.D.Cal. Apr.14, 1994), *aff'd,* 69 F.3d 544 (9th Cir.1995) (unpublished). As resolved in the previous summary judgment ruling, *Lillbask,* 117 F.Supp.2d at 194–95, Redding Defendants' actions in refusing to grant a PPT was found not to have violated the IDEA. Plaintiff neither alleges nor asserts any other way in which Redding Defendants have treated Lindsey differently than similarly situated students.

### I. Retaliation Claim (as against Redding Defendants)

Plaintiff claims Redding Defendants placed Lindsey at St. Vincent's in retaliation against her for her advocacy in the due process hearings. She sues under § 504 of the Rehabilitation Act and for violation of 34 C.F.R. Part 104.61. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), provides, "No otherwise qualified individual with a disability ... shall solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...."

 Against her claim, Redding Defendants first argue that the statute protects only a "qualified individual with a disability," not the guardian of a "qualified individual with a disability." Their argument is meritless. The statute has been construed on behalf of disabled people to include those on whom they depend to vindicate their rights. *Weber ex rel. Samuel M. v. Cranston Sch. Comm.,* 212 F.3d 41, 48 (1st Cir.2000). The companion federal regulation, 34 C.F.R. § 100.7(e) (emphasis added), comes to the same conclusion: "No recipient ... shall intimidate, threaten, coerce, or discriminate against *any individual* for the purpose of interfering with any right or privilege secured by ... the Act ... because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part."

 Redding Defendants next argue that because the determination of the hearing officer to place Lindsey at St. Vincent's was upheld after being given due weight, the act of placing him there can not support a retaliation claim. Redding Defendants sought to portray Plaintiff as a "hostile parent" and did so before the Fourth Hearing Officer. That she was assertedly hostile was claimed as a reason to place Lindsey at St. Vincent's. The submitted evidence of her hostility was the long-standing relationship she has had with the Board, a relationship defined by each of their respective advocacy on behalf of Lindsey. Redding Defendants characterizes the causal connection as a mere "metaphysical doubt." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). It is not. It is a genuine issue of material fact, sufficient to survive summary judgment. Evidence of hostility and of zealous advocacy involve similar factual predicates. Redding Defendants asserted before the Fourth Hearing Officer that in part because of Plaintiff's hostility, Lindsey should be sent to St. Vincent's. Whether they were motivated by the in-

tent to thereby punish Plaintiff or by the intent to do what is in Lindsey's best interest is a question for the jury to decide.

## V. PLAINTIFF'S MOTION TO COMPEL DISCOVERY

Plaintiff moves to compel answers to her written requests for admission and answers to her deposition questions. In this court's previous ruling on discovery, discovery against Redding Defendants was limited to matters, not privileged, relevant to Plaintiff's retaliation claim, that is to say, whether Redding Defendants' IEP placing Lindsey at St. Vincent's was in retaliation against Plaintiff. *See* FED. R. CIV. P. 26(b)(1) (Nov. 30, 2000). Questions which sought answers already available in the administrative record were barred as duplicative.

On November 16, 2000, Plaintiff was permitted to conduct discovery on her retaliation claim until January 10, 2001. The deadline was subsequently extended to February 10, 2001. The deadline was extended again until March 2, 2001. After another extension, the deadline for the completion of discovery lapsed on June 11, 2001. After almost seven months, Plaintiff served on June 10, 2001, one day before the deadline for the completion of all discovery, by first-class mail a motion to compel additional discovery. After almost seven months of discovery, a motion to compel received after the expiration of the deadline for the *completion* of all discovery is untimely. For this reason, Plaintiff's request for further depositions is denied.

Plaintiff also moves for requests for admission, mostly to confirm the genuineness of various documents. Redding Defendants object, arguing that since the docu-

ments are settlement communications, they are inadmissible at trial. Redding Defendants' objection is meritless. Mere inadmissibility at trial is not a bar to discovery. *See* FED. R. CIV. P. 26(b)(1) (Nov. 30, 2000) ("[r]elevant information need not be admissible at trial"). Given that the burden and expense in responding to requests for admission is minimal and given that it may make a trial on the merits more efficient, Plaintiff's request for admissions is granted. Given its untimely nature, any request for attorneys' fees in conjunction with the granting of the request is denied.

On July 27, 2001, Plaintiff had moved for a 30–day extension of time in which to conduct additional discovery. The motion had been denied, noting that any extension of time would be considered as part of the resolution of the motion to compel. In light of the above, the motion for an extension of any other discovery remains denied.

## VI. PLAINTIFF'S MOTION FOR RELIEF FROM ORDER

Pursuant to FED. R. CIV. P. 60(b)(6), Plaintiff moves for relief from the previous summary judgment ruling,[7] upholding the hearing officer's decision to place Lindsey at St. Vincent's. *See Lillbask,* 117 F.Supp.2d at 199–202. She asserts changes in circumstances, changes in the law, and the interests of justice.

FED. R. CIV. P. 60(b) provides, "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (6) any other reason justifying relief from the operation of the judgment."

---

**7.** Plaintiff also argues for reconsideration of the previous summary judgment ruling. D. CONN. L. CIV. R. 9(e) requires motions for reconsideration be brought within ten days of the filing of the decision or order from which relief is sought. To the extent she argues for "reconsideration" instead of "relief," Plaintiff's motion is denied as untimely.

Motions under FED. R. CIV. P. 60(b) are committed to the sound discretion of the district court and are generally granted only upon a showing of exceptional circumstances. *Jedrejcic . v. Croatian Olympic Comm.*, 190 F.R.D. 60, 76 (E.D.N.Y.1999) (citation omitted); *see also Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir.1986) ("properly invoked only when there are extraordinary circumstances justifying relief"). While an intervening change of the law can be a basis for granting a FED. R. CIV. P. 60(b)(6) motion, *Matarese v. LeFevre*, 801 F.2d 98, 107 (2d Cir.1986), the burden is on the movant to show a "significant change in the law," *Rufo v. Inmates of the Suffolk County Jail*, 502 U.S. 367, 384, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992); *Thompson v. County of Franklin*, 127 F.Supp.2d 145, 163 (N.D.N.Y.2000) (a mere change in the law rarely constitutes extraordinary circumstances justifying vacatur of a final judgment under FED. R. CIV. P. 60(b)(6)). Plaintiff shows neither a "significant change in the law" or "extraordinary circumstances" to justify relief under FED. R. CIV. P. 60(b).[8]

Plaintiff first points to a proposed settlement agreement in *P.J. v. Conn. Bd. of Educ.*, No. 2:91cv180(RNC) (D. Conn. filed Jan. 2, 1991). The settlement agreement had not yet been signed by the plaintiffs in that case or by the State nor had it been approved by U.S. District Judge Robert Chatigny. The text of the proposed settlement agreement she offers is clearly marked "DRAFT." For these reasons, the proposed settlement agreement is not a "significant change in the law." [9]

She also points to the Second Circuit case of *M.S. ex rel. S.S. v. Board of Education*, 231 F.3d 96 (2d Cir.2000), *cert. denied*, 532 U.S. 942, 121 S.Ct. 1403, 149 L.Ed.2d 346 (2001), decided about one month after the first summary judgment in the present case was decided. Contrary to Plaintiff's assertions, this decision substantially reiterates existing law, namely the two-prong test of *Rowley*, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690, and merely applies that law to the facts of the case before it. Even if the case does represent a change in law, the change is not "significant" enough to justify granting a FED. R. CIV. P. 60(b)(6) motion.

 She next points to a response her counsel received from the U.S. Department of Education to an inquiry she sent them. She asserts the response stands for the proposition that the Connecticut PPT requirement of CONN. GEN. STAT. § 76h(a)(1) is inconsistent with the IDEA. An advisory letter from a single staff attorney at the U.S. Department of Education to a private lawyer about a Connecticut statute is not dispositive. *See* 20 U.S.C. § 1406(f)(1) ("[a]ny written response by the Secretary under subsection (e) regarding a policy, question, or interpretation ... shall include an explanation that the written response—(1) is provided as informal guidance and is not legally binding"); *Doe ex rel. Doe v. Bd. of Educ.*, No. 94C6449, 1996 WL 392160, at *2 (N.D.Ill. July 11, 1996), *aff'd*, 115 F.3d 1273 (7th Cir.1997) (such interpretive rules not legally binding on the courts); *Raymond S. ex rel. Joseph S. v. Ramirez*, 918

---

8. As an additional matter, FED R. CIV. P. 60(b) provides relief from a "final judgment, order, or proceeding." With the case still pending, absent a FED. R. CIV. P. 54(b) certification, the previous summary judgment is interlocutory and not subject to FED. R. CIV. P. 60(b). *See Burke v. Warren County Sheriff's Dep't*, 916 F.Supp. 181, 183 (N.D.N.Y.1996).

9. State Defendants also argue that the terms of the proposed settlement agreement, even if they were in effect at the time the Fourth Hearing Officer made his decision, would have had no effect on the way he reached the decision that he did. This issue need not be addressed.

F.Supp. 1280, 1291 (N.D.Iowa 1996) (such interpretive rules have not been subjected to notice and comment and are issued merely to advise the public of the agency's construction of the statutes and rules it administers). The relevant portion of the letter is not even persuasive. For instance, the letter rests its conclusion on the finding that the application of the Connecticut requirement that all issues be first raised at a PPT meeting "would bar any review of school district actions if a district refused to conduct a PPT meeting." The reasoning is incorrect. A parent denied a PPT meeting could simply appeal the refusal to a hearing officer. *See Lillbask,* 117 F.Supp.2d at 196. Should the hearing officer decide that the parent's request was reasonable, the school district would be obliged to provide a PPT meeting. *See id.* Should the hearing officer decide that the PPT request was not reasonable, the parent could still request a district court review that decision. *See id.* "A contrary conclusion would allow PPT meetings to be transformed from the IDEA's goal of a healthy interaction between parents and educators into a weapon in the hands of parents to hold educators and experts hostage to meetings without limit." *See id.* at 195.

## VII. CLAIMS OF THE FOURTH AMENDED COMPLAINT

### A. Paragraph 45

Plaintiff was previously granted summary judgment that State Defendants violated the IDEA and Conn. Gen. Stat. § 10–76h(b) as to Hearings 97–028, 97–046, and 97–131. That ruling is not disturbed. *See infra,* IV.C. Plaintiff's claim that State Defendants violated the IDEA and Conn. Gen. Stat. § 10–76h(b) as to Hearing 97–231 is dismissed as moot. *See infra,* IV.B. No claim remains for trial.

### B. Paragraph 46

State Defendants were previously granted summary judgment on this claim. No claim remained.

### C. Paragraph 47

Redding Defendants were previously granted summary judgment that the failure to grant Plaintiff's request for a PPT, in this instance, did not violate the IDEA, § 504 of the Rehabilitation Act, Conn. Gen. Stat. § 10–76h(a)(1), the due process clause of the U.S. constitution, or the equal protection clause of the U.S. constitution. Redding Defendants are granted summary judgment that the failure to grant Plaintiff's request for a PPT, in this instance, did not violate Connecticut due process and equal protections. *See infra,* IV.D, IV.H. Plaintiff is denied summary judgment on this claim. *See id.* No claim remains.

### D. Paragraph 48

State Defendants and Redding Defendants were each previously granted summary judgment on this claim. No claim remained.

### E. Paragraph 49

State Defendants and Redding Defendants were each previously granted summary judgment that Plaintiff's federal due process rights have not been violated. State Defendants and Redding Defendants are each granted summary judgment that Plaintiff's Connecticut due process rights have not been violated in making comments about the conduct of her attorney. *See infra,* IV.E. Plaintiff is denied summary judgment on this claim. *See id.* No claim remains.

### F. Paragraph 50

State Defendants and Redding Defendants were each previously granted sum-

mary judgment on this claim. No claim remained.

### G. Paragraph 51

Redding Defendants are denied summary judgment as to the claim that the IEP placing Lindsey at St. Vincent's was in retaliation against Plaintiff. *See infra,* IV.I.

### H. Paragraph 52

State Defendants and Redding Defendants were each previously granted summary judgment that CONN. GEN. STAT. § 10–76h(a)(1) is not unconstitutional under the due process clause of the U.S. Constitution. State Defendants and Redding Defendants are each granted summary judgment that CONN. GEN. STAT. § 10–76h(a)(1) is not unconstitutional under the due process clause of the Connecticut constitution. No claim remains. *See infra,* III.F. Plaintiff is denied summary judgment on this claim. *See id.*

## VIII. SCHEDULING

The only claim remaining for trial is the retaliation claim against Redding Defendants. A Trial Preparation Order will issue, with Part A due by May 3, 2002, Part B due by May 20, 2002, and Part C due by April 4, 2002.

The IDEA stay-put provision, 20 U.S.C. § 1415(j), provides, "[D]uring the pendency of any proceedings conducted pursuant to this section . . . the child shall remain in the then-current educational placement of such child . . . until all such proceedings have been completed." The only remaining claim, for retaliation, is brought under the Rehabilitation Act, not the IDEA. With the resolution of all the administrative appeal claims above, the stay-put order dissolves.

## IX. CONCLUSION

Plaintiff's motion to submit evidence, (Dkt. No. 287), is **denied.** State Defendants' motion for enlargement of time *nunc pro tunc,* (Dkt. No. 246), is **denied.** State Defendants' motion for reconsideration, (Dkt. No. 242–2), is **denied.** State Defendants' supplemental motion for summary judgment, (Dkt. No. 242–1) is **granted in part** and **denied in part.** Redding Defendant's motion for summary judgment, (Dkt. No. 256), is **granted in part** and **denied in part.** Plaintiff's motion for summary judgment as to Connecticut constitution, (Dkt. No. 275), is **denied.** Plaintiff's motion to compel, (Dkt. No. 263), is granted in part and denied in part. Plaintiff's motion for relief from order, (Dkt. No. 268), is denied. A Trial Preparation Order will issue, with Part A due by May 3, 2002, Part B due by May 20, 2002, and Part C due by April 4, 2002. The stay-put order is dissolved.

SO ORDERED.